UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EVGENY MASHCHENKO et al.,** | Civil Action No. 25-12387 (RK) |
| Petitioners, | |
| v. | MEMORANDUM OPINION |
| **ERIC ROKOSKY et al.,** | |
| Respondents. | |

This matter comes before the Court on a Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 brought by Petitioners Evgeny and Evgeniia Mashchenko. (ECF No. 1.) Following briefing and a conference with the parties on January 21, 2026, the Court entered a Text Order granting the Petition and directing Respondents to provide each Petitioner with an individualized bond hearing within seven days. (ECF Nos. 31–32.) This Memorandum Opinion sets forth the Court's reasons for granting the Petition.

### I.    RELEVANT BACKGROUND

Petitioners Evgeny and Evgeniia Mashchenko are husband and wife and citizens of the Russian Federation. (*See* ECF No. 1, Petition at ¶ 15.) On or about April 29, 2025, Petitioners and their then-eight year old son M.E.M. sought admission into the United States after crossing the border from Mexico without documentation. (*See* Petition at ¶¶ 2, 15; ECF No. 13-1, Exhibit A at 1.) Customs and Border Patrol ("CBP") found Petitioners to be inadmissible to the United States and ordered them removed. (*See* Petition ¶ 16; *see also* ECF No. 13-5, Exhibit F.) Because Petitioners were detained as "arriving aliens" at the border, CBP placed them into expedited removal proceedings pursuant to INA § 235(b)(1) and transferred them to the custody of

Immigration and Customs Enforcement ("ICE").  (*See id.*)  Petitioners requested asylum and relief under the Convention Against Torture ("CAT").  (*See* Petition at ¶¶ 16–18.)  On or about May 15, 2025, ICE detained Petitioners at the Elizabeth Contract Detention Facility.[1]  (Petition at ¶¶ 10–11, 16; ECF No. 14-4, Exhibit E.)  Petitioners were separated from M.E.M. who is in the custody of Health and Human Services ("HHS") Office of Refugee Resettlement ("ORR"), which placed him in foster care due to his parents' detention.  (*See* Petition at ¶ 16; ECF No. 30-1, Young Center Letter at 1–2; *see also* ECF No. 13, Answer at 11.)

Petitioners filed their initial habeas Petition pro se on June 30, 2025, when they had been detained for approximately two months.  (ECF No. 1.)  In their Petition and subsequent filings, they raised claims challenging their 1) prolonged detention, 2) family separation, and 3) the process and relief available in their underlying immigration proceedings, and Respondents filed an answer opposing relief and two status reports.  (*See* ECF Nos. 1, 13, 19, 21–23.)

Counsel entered an appearance on Petitioners' behalf on January 14, 2026  (ECF No. 24) and notified the Court that the immigration court had granted asylum to Petitioners and M.E.M. on January 9, 2026 (*see* ECF Nos. 25, 25-1), which rendered moot the claims challenging their underlying immigration proceedings.  Counsel acknowledged that despite the grant of asylum, Petitioners were still subject to detention under 8 U.S.C. § 1225(b), unless the Department of Homeland Security ("DHS") waived or forfeited an appeal of the decision to the Board of Immigration Appeals ("BIA"), and that DHS had 30 days to formally notice an appeal.[2]  (ECF No. 5 at 1–2.)  Counsel also noted that the typical appeal to the BIA takes six to twelve months for

---

[1] Evengiia was transferred from Elizabeth Detention Center to Delaney Hall in Newark, New Jersey, after the Petition was filed.  (*See* ECF No. 13, Answer at 8.)

[2] An Immigration Judge's order granting relief is stayed for 30 days to permit DHS to file an appeal.  *See* 8 C.F.R. § 1003.6 (Stay of execution of decision).

briefing and a decision, not including any later immigration proceedings or petition for review to the Third Circuit. (*Id.* at 2.) Counsel sought Petitioners' immediate release in light of their prolonged detention, the likelihood of their continued detention in a jail setting, and their ongoing separation from each other and M.E.M., which has caused Petitioners to suffer from depression and is not in the best interests of M.E.M. (*See id.* at 2–4; *see also* ECF No. 30.)

On January 15, 2026, this Court issued an Order to Show Cause 1) dismissing the claims related to the underlying asylum/removal proceedings as moot and 2) directing Respondents to show cause as to why Petitioners should not be released based on their prolonged detention. (ECF No. 26.) In lieu of a response, the parties requested a telephone conference, which the Court held on January 21, 2026. (ECF Nos. 27, 29, 31.)

At the conference, Respondents' counsel confirmed that DHS intends to appeal the IJ's January 9, 2026 ruling granting asylum to Petitioners and did not dispute that their detention was likely to continue for months, if not years. After hearing argument, placing preliminary findings on the record, and notifying the parties of its intent to grant relief, the Court issued a Text Order granting the Petition and ordering an individualized bond hearing for each Petitioner within seven days with this opinion to follow. (ECF No. 32.)

II.     **ANALYSIS**

Under 28 U.S.C. § 2241, a district court may exercise jurisdiction over a habeas petition when the petitioner is in custody and alleges that his custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). A petitioner may seek § 2241 relief only in the district in which he or she is in custody. *United States v. Figueroa*, 349 F. App'x 727, 730 (3d Cir. 2009). This Court has jurisdiction over Petitioners'

claims as they are detained within this district and allege that their custody violates the Due Process Clause of the Fifth Amendment.

It is well established that the Due Process Clause prohibits the unreasonably prolonged detention of a noncitizen who has a final order of removal but there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 682, 701 (2001) (applying the canon of constitutional avoidance and setting a rebuttable six-month limitation on post-final order detention). Here, Petitioners do not have a final order of removal and are in mandatory detention under 8 U.S.C. § 1225(b), which applies to arriving aliens. Whether noncitizens detained under § 1225(b) have due process rights to avoid prolonged detention has not been addressed by the Supreme Court or the Third Circuit. *See, e.g.*, *Maksaddzhon A. v. Pittman*, No. 25-13734, 2025 WL 3648710, at *2 (D.N.J. Dec. 17, 2025) (noting that "neither the United States Supreme Court nor the Court of Appeals for the Third Circuit has directly addressed" this issue). In *Jennings v. Rodriguez*, the Supreme Court held that "nothing in the statutory text [of § 1225(b)] imposes any limit on the length of detention." 583 U.S. 281, 297 (2018) (holding that the plain language of 8 U.S.C. §§ 1225(b), 1226(c), and 1226(a) do not require periodic bond hearings every six months). The *Jennings* Court did not determine whether noncitizens subjected to prolonged detention under those statutes are entitled to bond hearings as a matter of due process. *See id.* at 312.

Subsequently, in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210 (3d Cir. 2020), the Third Circuit addressed the due process rights of permanent residents who are mandatorily detained during removal proceedings under 8 U.S.C. § 1226(c). The circuit court held that "an alien lawfully present but detained under § 1226(c) can still challenge his

4

detention under the Due Process Clause" and that the Due Process Clause demands a bond hearing once detention has become "unreasonably prolonged." *Id.* at 210–11.

Prolonged detention is a "highly fact-specific inquiry" without a bright line. *German Santos*, 965 F.3d at 210. There are four factors for consideration: (1) the duration of the petitioner's detention; (2) the likelihood of continued detention; (3) the reasons for any delay; and (4) the conditions of the petitioner's confinement. *German Santos*, 965 F.3d at 211–12 (citing the factors in *Chavez-Alvarez v. Warden York C'ty Prison*, 783 F.3d 469, 475–78 (3d Cir. 2015)). "The most important factor is the duration of detention," and "a lawful permanent resident's detention [becomes] unreasonable sometime between six months and one year." *See id.* at 211 (citing *Chavez-Alvarez*, 783 F.3d at 475–78). In addition to the length of detention, the Court must consider the likelihood of continued detention, and "[w]hen the noncitizen's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *See id.* (citing *Chavez-Alvarez*, 783 F.3d at 477–78). Courts must also consider the reasons for any delays, including "whether either party made careless or bad-faith 'errors in the proceedings that caused unnecessary delay.'" *Id.* (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232 (3d Cir. 2011)). However, courts "do not hold a [petitioner's] good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings." *Id.* (citing *Chavez-Alvarez*, 783 F.3d at 476–77). Finally, courts must consider whether the noncitizen's "conditions of confinement are 'meaningfully different[]' from criminal punishment." *Id.* (quoting *Chavez-Alvarez*, 783 F.3d at 478).

Lower courts in the Third Circuit have applied the *German Santos* factors in analyzing whether prolonged detention under § 1225(b) violates due process. *See, e.g.*, *Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (agreeing with the "weight of authority" finding that arriving

5

aliens detained pre-removal under § 1225(b) have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable); *Maksaddzhon A.*, 2025 WL 3648710, at *3 (same); *Tuser E. v. Rodriguez*, 370 F. Supp.3d 435, 443 (D.N.J. 2019) (same); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 826 (W.D. Pa. 2025) (same). This Court finds these decisions persuasive and likewise applies the *German Santos* factors in assessing whether Petitioners' detention has become unduly prolonged and thus violates their due process rights.

The Court begins with the length of Petitioners' detention, which is approximately nine months, and the likelihood of their continued detention, which is all but guaranteed due to DHS's intent to appeal the IJ's decision granting asylum. As counsel for Respondents candidly acknowledged at the telephone conference, Petitioners' detention is likely to continue for many months, if not years, due to that appeal, thus extending Petitioners' detention well beyond the twelve-month outer limit in *German-Santos*. *See also Banda v. McAleenan*, 385 F. Supp.3d 1099, 1119 (W.D. Wash. 2019) (noting that an appeal to BIA and petition for review to the circuit court "may take up to two years or longer"). In *C.B. v. Oddo*, No. 25-263, 2025 WL 2977870, at *5 (W.D. Pa. Oct. 22, 2025), the district court found a ten-month detention unreasonably prolonged where the petitioner was granted asylum and DHS had appealed. And even if the Court gives greater weight to the current length of detention, courts in this circuit and elsewhere have found similar lengths of detention unduly prolonged. *See A.L.*, 761 F. Supp. 3d at 826 (nearly ten-month detention unreasonable where petitioner was granted withholding of removal but denied asylum and both parties appealed); *Frank B. v. Green*, No. 19-346, 2020 WL 1673026, at *4 (D.N.J. Apr. 6, 2020) (finding eleven-month detention unreasonable where the BIA had granted the petitioner's motion to reopen proceedings); *Amado v. U.S. Dep't of Just.*, No. 25-2687, 2025 WL 3079052, at

*6 (S.D. Cal. Nov. 4, 2025) ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable."); *Masood v. Barr*, No. 19-07623, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) (finding detention for nearly nine months weighs in favor of the petitioner).  Here, Petitioners have already been detained nine months, "an unreasonably long time, and there is no end in sight." *German Santos*, 965 F.3d at 213.  For these reasons, the *German Santos* factors assessing the current length of detention and the likelihood that detention will continue strongly weigh in Petitioners' favor.

The remaining factors also weigh in Petitioners' favor.  There is no evidence that either party has acted in bad faith.  Indeed, the immigration court granted Petitioners' asylum application in what appears to be a careful and thorough decision (*see* ECF No. 25-1), which suggests that Petitioners sought asylum in good faith, and DHS exercised its right to appeal for undisclosed reasons.  It is also undisputed that Petitioners are detained in jail-like settings and are separated from one another and from M.E.M, which has understandably affected their mental health.  Their conditions of confinement are not "meaningfully different" from criminal punishment, *German Santos*, 965 F.3d at 212, and the impact is exacerbated by their separation.

In sum, the Court finds that "[g]iven its length, likelihood of continuing, and conditions, [Petitioners' detention] has become unreasonable." *German Santos*, 965 F.3d at 212.

Although Petitioners' counsel sought immediate release from detention based on extraordinary circumstances, the remedy for prolonged detention in *German Santos* is a bond hearing at which DHS has the burden to show danger to the community or flight risk.  *See German Santos*, 965 F.3d at 213; *A.L.*, 761 F. Supp. 3d at 824 (declining to order the petitioner's immediate release and directing instead that he be provided a prompt bond hearing).  At the telephone conference, Respondents argued that the burden should remain on Petitioners, citing *Borbot v.*

*Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 275 (3d Cir. 2018) (explaining relevant bond process for detainees subject to § 1226(a))). The Court, however, follows *German Santos* and the district courts applying that decision to detention under § 1225 and finds that the burden to show flight risk and dangerousness should remain on the government. *See Tuser E.*, 370 F. Supp. 3d at 443 (placing the burden on the government at bond hearing to show that noncitizen detained under 8 U.S.C. § 1225 is a flight risk or a danger to the community); *A.L.*, 761 F. Supp. 3d at 826 (same); *Maksaddzhon A.*, 2025 WL 3648710, at *3 (same).

### III.   CONCLUSION

For the reasons stated in this Memorandum Opinion, the Court grants the habeas petition and directs Respondents to provide each Petitioner with an individualized bond hearing within seven (7) days of the Court's Text Order issued on January 21, 2026. At the bond hearing, the burden shall be on the government to show that the Petitioner is a danger to the community or a flight risk.[3]

 

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: January 25, 2026

---

[3] Petitioners also seek release based on their alleged constitutional and statutory rights to avoid family separation. After Respondents update the Court with the outcome of the bond proceedings, the Court will either dismiss that claim as moot if Petitioners are granted bond or permit Petitioners to litigate the family separation claim if bond is denied.